IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FINIS DORSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10 C 3041 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| JOHN SMITH, JASON VANNA, | ) | |
| and the CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Finis Dorsey sued two Chicago police officers, John Smith and Jason Vanna ("the officers"), as well as their employer, the City of Chicago (collectively, "Defendants") under 42 U.S.C. § 1983 and Illinois law after the officers arrested Dorsey for possession of a handgun and trespassing while visiting a friend at an apartment building on Chicago's south side. Specifically, Dorsey asserts that the officers falsely arrested him, maliciously prosecuted him, and conspired to violate his constitutional rights. Defendants move for summary judgment, asserting that the officers had probable cause to arrest Dorsey. Because there are factual disputes as to whether Dorsey had a gun that day, and whether he was lawfully in the building, the Court denies Defendants motion for summary judgment and the case will proceed to trial.

## I.     MATERIAL UNDISPUTED FACTS

On the morning of September 29, 2008, Dorsey went to visit his friend Keanta Harrington at an apartment building at 7931 South State Street in Chicago. (Pl. 56.1 Resp. ¶¶ 23, 25.) That same morning, Smith drove past the building and saw people loitering outside. (*Id.* at ¶¶ 21-22.) Based on a number complaints and police responses, the officers knew that building to be a hive of

drug and other illegal activity, and Smith returned with Vanna and other officers to investigate. (*Id.* at ¶¶ 9-11, 13-15, 17-19, 21-22.) The officers went upstairs to an area of the building that, in their experience, had drug activity. (*Id.* at ¶ 30.) They spotted two black males looking at them from around the corner and then try to leave through another door to avoid the officers. (*Id.* at ¶ 31.) At the same time, Dorsey decided to leave Harrington's apartment. (*Id.* at ¶ 32.) Dorsey saw two men run past him, followed by a police officer. (*Id.*)

The parties dispute what happened next. According to the officers, they detained two individuals and then saw four black men, one of which was Dorsey, running up a nearby staircase. (Smith Dep. at 37-38.) Smith testified that once the officers stopped those men, Dorsey reached into his waistband and tossed aside a gun as he went to the floor. (Smith Dep. at 39.) Vanna testified that he did not see Dorsey drop the gun, but he heard one hit the floor and he recovered a gun near Dorsey when he arrived on the scene a short time later. (Vanna Dep. at 16-19.) Vanna cannot recall Harrington being at the scene. (*Id.* at 21.) Dorsey, on the other hand, asserts that he and Harrington left Harrington's apartment when the officers told them both to go to the floor, joining several other people already detained there. (Dorsey Dep. at 43-45.) At that point, according to Dorsey, Harrington told the officers he lived in the building, showed his identification, and told them that Dorsey was his friend. (*Id.* at 47-48.) Harrington testified at Dorsey's criminal trial that he heard Dorsey tell the officers that he was visiting Harrington. (Trial Tr. at 60.) Harrington then went back into his apartment, and Dorsey remained outside with the officers. (Trial Tr. at 52-58.) Both Harrington and Dorsey testified that he never had a gun that day. (Dorsey Dep. at 50; Harrington Dep. at 26.) Dorsey asserts that at the scene, the officers told him and the other men detained that

they were being charged with trespassing. (Dorsey Dep. at 43-45.) Dorsey claims he only knew he was being charged with possessing a gun once he reached the station. (*Id.* at 51.)

The owner of the building, Lon Evans, signed a criminal complaint against Dorsey for trespassing after the officers called him to the building. (Pl. 56.1 Resp. ¶ 44.) At his deposition, Evans testified that though the signature on the complaint was his, he did not remember signing it; the complaint was one of many he signed for the police while he owned the building. (Evans Dep. at 15-16.) Evans also testified that he did not know if he ever gave notice to Dorsey that he was barred from the property, and stated that Dorsey would not be a trespasser if he was visiting a friend. (*Id.* at 18-19.) In any event, Evans did not know whether Dorsey was visiting anyone that day. (*Id.* at 27.) The State's Attorney charged Dorsey, a convicted felon, with various felonies based on his alleged gun possession and the court struck the trespassing charge. (Pl. 56.1 Resp. ¶¶ 45-46.) An examination of the gun turned up no fingerprints, and after a bench trial in the Circuit Court of Cook County, a judge acquitted Dorsey of the gun charge. (*Id.* ¶¶ 47-48.)

## II.    STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment

to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement."
*Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

## III. DISCUSSION

Defendants assert that the officers had probable cause to arrest Dorsey and, as a result, they are entitled to summary judgment on all three of Dorsey's claims. *See Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (lack of probable cause is an element of a false arrest claim); *Brooks v. City of Aurora*, 653 F.3d 478, 483 (7th Cir. 2011) ("probable cause is an absolute defense to a claim of unlawful arrest in violation of the Fourth Amendment"); *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010) (absence of probable cause is an element of a malicious prosecution claim); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (affirming dismissal of a conspiracy claim because there was no underlying constitutional violation).

For false arrest, "[a] police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). The Court assesses probable cause objectively by looking "at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). As for malicious prosecution, under Illinois law, probable cause is "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Johnson v. Target Stores Inc.*, 791 N.E.2d 1206, 1219 (Ill. App. Ct. 2003). "[T]he pertinent time for making the probable cause determination [for a malicious prosecution claim] is the time when the charging document is filed, rather than the time of the

arrest." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (citing *Porter v. City of Chicago*, 912 N.E.2d 1262, 1274 (Ill. App. Ct. 2009).

Turning to the false arrest claim, if the officers had probable cause to arrest Dorsey for any crime, his arrest was lawful. *See Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004). Consequently, the Court must analyze if the officers had probable cause to arrest for either trespassing or unlawful possession of a gun. With respect to the gun, there is a dispute of fact as to whether Dorsey had a gun that day: the police say yes, Dorsey and Harrington say no. A reasonable jury could credit Dorsey and Harrington's testimony and find no probable cause for the arresting Dorsey on a charge of unlawful possession of a weapon.

Illinois law defines criminal trespassing, in applicable part, as: (1) entering or remaining in a building "knowingly and without lawful authority;" (2) entering a building after receiving prior notice from the owner or occupant that entry is forbidden; or (3) remaining in a building after notice from the owner or occupant. *See* 720 Ill. Comp. Stat. 5/21-3. According to Harrington and Dorsey, Dorsey was visiting Harrington, who lived in the building, and the officers were aware of that. Further, Defendants have not presented any evidence that Dorsey had prior notice that he was not welcome in the building; the building's owner testified that he had never gave any such notice to Dorsey, and any posted "No Trespassing" signs would not apply to Dorsey if he was visiting Harrington. Indeed, the building's owner did not arrive until after the officers detained Dorsey, and he signed the criminal complaint after the officers presented it to him. Further, given that the officers were working as a team in investigating the incident at the apartment building, and only one of the officers testified that he saw Dorsey drop the gun, a reasonable jury could find the officers

5

conspired to falsely arrest Dorsey. These factual disputes with respect to both the trespassing and gun charges mean Dorsey's false arrest and conspiracy claims must go to trial.

Defendants offer an additional grounds for summary judgment on Dorsey's malicious prosecution claim, specifically, that Dorsey cannot demonstrate "malice" on the part of the officers. *See Hulbert*, 938 N.E. at 512 (listing malice as an element of a malicious prosecution claim under Illinois law); *see also Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000) (finding a lack of probable cause does not itself show malice, and a jury may only infer malice from a lack of probable cause to arrest if there is no other credible evidence which refutes that inference). Malice is present when a prosecution is initiated for any reason other than to bring a party to justice. *Id.*

Here, taking the facts in the light most favorable to Dorsey, a reasonable jury could find that the officers never saw Dorsey with a gun and that their reason for charging Dorsey with that crime—which initiated his subsequent prosecution—was to hold someone responsible for the gun. Defendants also assert that summary judgment is appropriate on Dorsey's malicious prosecution claim against Vanna because Vanna only assisted Smith in arresting Dorsey. However, a reasonable jury could conclude that even though Vanna testified he did not see Dorsey drop the gun, Vanna participated with Smith in the investigation. In short, Defendants have not demonstrated that no reasonable jury could find Vanna did not maliciously prosecute Dorsey.

Finally, Defendants assert that they are entitled to qualified immunity, but concede in their motion papers, as they must, that "[i]n this case plaintiff does have a clearly established right not to be arrested without probable cause." (Doc. 49 at 12.) Given that there is a dispute of fact as to

whether the officers had probable cause to arrest Dorsey, Defendants are not entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 48) is denied. The case will proceed to trial per the previously set trial date.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 23, 2011